# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENIO BELTRAME,<br><br>                              Plaintiff,<br>vs.<br><br>JPMORGAN CHASE BANK;<br>WASHINGTON MUTUAL BANK; et al.,<br>                             Defendants. | CASE NO. 10-CV-164 JLS AJB<br><br>**ORDER (1) GRANTING REQUEST FOR JUDICIAL NOTICE;**<br>**(2) GRANTING MOTION TO DISMISS**<br><br>(Doc. Nos. 32, 32-2) |

      Presently before the Court are Defendant JPMorgan Chase Bank, N.A.'s (1) motion to dismiss Plaintiff Eugenio Beltrame's second amended complaint (Doc No. 32) and (2) request for judicial notice (Doc. No. 32-2 (RJN)). Also before the Court are Plaintiff's opposition (Doc. No. 35 (Opp'n)) and Defendant's reply (Doc. No. 36 (Reply)). Having fully considered the facts and the law, the Court **GRANTS** Defendant's request for judicial notice and **GRANTS** Defendant's motion to dismiss.

## BACKGROUND

      Plaintiff owns property located at 45600 Rainbow Canyon Road, Temecula, California. (Doc. No. 31 (SAC) ¶ 2.) On July 17, 2007, Plaintiff applied for a loan with Defendant in the amount of $372,000.00. (*Id.* ¶¶ 2–3.) The loan was approved the next day and secured by a deed of trust on the property. (*Id.*) In April 2009, "Plaintiff began to suspect that Defendant was overcharging Plaintiff for his mortgage payment." (*Id.* ¶ 6.) He alleges that he subsequently sent Defendant two qualified written requests (QWRs), and that Defendant only responded to one. (*Id.* ¶¶ 7–26.)

## **LEGAL STANDARD**[1]

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible if the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's

---

[1] In his opposition, Plaintiff fails to properly state the legal standard for a motion to dismiss under Rule 12(b)(6). Although the Court noted this same error in granting Defendant's motion to dismiss the first amended complaint, Plaintiff continues to cite cases from the Fifth Circuit and Texas district courts. (Opp'n 11–12.) These cases are inapposite for two reasons. First, several binding United States Supreme Court and Ninth Circuit cases discuss the relevant legal standard under Rule 12(b)(6). Second, the Supreme Court's opinions in *Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), largely superseded the cases that Plaintiff cites in his opposition.

"judicial experience and common sense." *Id.* at 1950 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

## ANALYSIS

### 1. Defendant's Request for Judicial Notice

In moving to dismiss Plaintiff's SAC, Defendant asks the Court to judicially notice three documents. (RJN 1–2.) The Court took judicial notice of the same three documents in ruling on Defendant's previous motions to dismiss. (Doc. No. 20, at 3; Doc. No. 30 (Order), at 3.) Under the circumstances, the Court finds that judicial notice of these documents is proper, and thus **GRANTS** Defendant's request.

### 2. Real Estate Settlement Procedure Act (RESPA) Claim

Plaintiff's first claim for relief alleges that Defendant violated RESPA, 12 U.S.C. § 2605,[2] by failing to respond to two QWRs for information on his loan. (SAC ¶¶ 37–45.) Section 2605(e)(1)(A) provides:

> If any servicer of a federal related mortgage loan receives a qualified written request from the borrower . . . for any information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . unless the action requested is taken with such period.

A QWR is a written request from the borrower for information relating to the servicing of the loan. § 2605(e)(1)(B). To qualify, the written request must "include[], or otherwise enable[] the servicer to identify, the name and account of the borrower." § 2605(e)(1)(B). The request must also state the reasons for the borrower's belief that the account is in error, or provide "sufficient detail to the servicer regarding other information sought by the borrower." § 2605(e)(1)(B). RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower." § 2605(i)(3).

RESPA provides a borrower with a cause of action if the servicer fails to respond to his QWR within the statutorily specified time. § 2605(f). A plaintiff suing under RESPA may recover actual

---

[2] All further statutory references are to Title 12 of the United States Code, unless otherwise indicated.

1  damages, up to $1,000 in "additional damages" where the defendant has engaged in "a pattern or
2  practice of noncompliance," reasonable costs, and attorney's fees. *Id.*

3  In granting Defendant's motion to dismiss Plaintiff's first amended complaint (FAC), this
4  Court concluded that Plaintiff inadequately pleaded a RESPA claim for two reasons. (Order 4.) First,
5  the Court found that Plaintiff failed to demonstrate that his correspondence with Defendant met the
6  statutory definition of a QWR. (*Id.* at 4.) As the Court noted, Plaintiff's FAC did not allege whether
7  the correspondence included the borrower's name and account, or enabled the servicer to identify
8  them. (*Id.*) Also, the FAC did not allege whether the correspondence stated the reasons for the
9  borrower's belief that the account was in error. (*Id.*)

10  Second, the Court dismissed the RESPA claim in the FAC because Plaintiff failed to
11  adequately plead an injury for which he could recover "actual or statutory damages." (*Id.* at 5.) As
12  the Court previously stated, Plaintiff's bald allegation that "Defendant['s] . . . violation of RESPA
13  caused [Plaintiff] actual and pecuniary damages" was wholly inadequate to make his "right to relief
14  . . . []plausible." (*Id.* at 5.)

15  In his SAC, Plaintiff seeks to correct the errors assigned to the RESPA claim as pleaded in the
16  FAC. For example, Plaintiff no longer summarily states, as he did in his FAC, that the letters sent to
17  Defendant were QWRs. (*See* SAC ¶ 40.) Instead, Plaintiff alleges that he sent two letters to
18  Defendant in which he identified the address of the property subject to the loan, the holder of the loan,
19  and the account number. (*Id.* ¶ 40.) This language partially satisfies the statutory definition of a QWR
20  because it "includes . . . the name and account of the borrower." § 2605(e)(1)(B).

21  Plaintiff then spills considerable ink alleging that the letters also listed the reasons why he
22  believed the account was "in error," presumably in an attempt to more fully satisfy the statutory
23  definition of a QWR. (SAC ¶¶ 8–9, 20–21, 41.) As alleged, the first letter included Plaintiff's belief
24  that Defendant was charging him for excessive interest on his loan and "optional products" that he did
25  not agree to purchase when he obtained the loan. (*Id.* ¶ 41.) This letter also allegedly expressed
26  Plaintiff's belief that he was a "victim of predatory lending practices." (*Id.* ¶ 8.) Further, Plaintiff
27  allegedly discussed his belief that Defendant had "fraudulently inflated" Plaintiff's income "so that
28  he would qualify for a mortgage loan that he could not really afford[,]" addressed the artificial

1    inflation of the principal balance on his loan, and questioned the "calculation of his monthly
2    payment[s]."  (*Id.*)  Also allegedly included were Plaintiff's beliefs that Defendant had inserted
3    "certain statements" in the loan agreement to which Plaintiff did not agree, misrepresented the terms
4    of the loan to him, modified the terms before he signed the loan, and forged his signature on some
5    documents.  (*Id.* ¶ 9.)

6    In the second letter, Plaintiff allegedly discussed how an audit that had been performed on his
7    mortgage file revealed "several discrepancies" in his interest payments.  (*Id.* ¶ 20.)  He also allegedly
8    informed Defendant that he was being charged $24.95 for an "optional product" that he did not agree
9    to purchase.  (*Id.* ¶ 21.)

10   Plaintiff further attempts to satisfy the statutory definition of a QWR by alleging that both
11   letters "provide[d] sufficient detail to the servicer regarding other information sought by the
12   borrower." § 2605(e)(1)(B). In the first letter, Plaintiff allegedly informed Defendant that he wanted
13   to determine whether: (1) the mortgage loan process complied with state and federal regulations; (2)
14   the holder of his promissory note was complying with state and federal regulations; (3) he had
15   received required disclosures; (4) his loan had been serviced in accordance with the terms of the
16   mortgage; (5) his loan had been serviced in accordance with state and federal regulations; (6) his
17   mortgage had been charged correctly; and (7) the interest and principal had been properly calculated.
18   (SAC ¶ 13.)  In the second letter, Plaintiff allegedly asked Defendant to explain how "his loan had
19   been serviced," and specifically asked why Defendant had sent him two billing statements containing
20   different amounts for the month of January, why Defendant was charging him $24.95 for an "optional
21   product," and how Defendant calculated his interest.  (*Id.* ¶¶ 20–21.)

22   Plaintiff's SAC also attempts to cure the FAC's deficiencies in pleading an injury for which
23   he could plausibly recover under RESPA.  Specifically, Plaintiff alleges he incurred expenses that he
24   did not agree to pay under his loan agreement, "including monthly charges for an optional product
25   [that he did not agree to purchase,] higher monthly payments due to overcharges on interest, and a
26   resulting increase in the principal owed on his loan."  (SAC ¶ 45.)

27   Although Plaintiff has cured several deficiencies in his FAC, he still has not adequately
28   pleaded pecuniary loss.  Indeed, "numerous courts have read Section 2605 as requiring a showing of

1  pecuniary damages to state a claim." *Molina v. Wash. Mut. Bank*, 2010 WL 431439, at *7 (S.D. Cal.
2  Jan. 29, 2010). "'This pleading requirement has the effect of limiting the cause of action to
3  circumstances in which [a] plaintiff can show that a failure to respond or give notice has caused them
4  actual harm.'" *Copeland v. Lehman Bros. Bank, FSB*, 2011 WL 9503, at *3 (S.D. Cal. Jan. 3, 2011)
5  (quoting *Shepherd v. Am. Home Mortg. Serv., Inc.*, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20,
6  2009)). Plaintiff fails to identify the "optional product" that he purportedly did not agree to purchase,
7  how much the principal owed on his loan increased as a result of overcharging, and the rate at which
8  Defendant overcharged him. *See id.* (finding Plaintiff did not adequately plead pecuniary loss
9  because, *inter alia*, he "fail[ed] to identify the fees and charges assessed on his loan") (internal
10 quotation marks omitted); *Kariguddaiah v. Wells Fargo Bank, N.A.*, 2010 WL 2650492, at *6 (N.D.
11 Cal. July 1, 2010) (finding Plaintiff's allegation that he suffered actual damages in "higher payments
12 and interest" insufficient for purposes of pleading pecuniary loss). Plaintiff also does not indicate how
13 the charges assessed on his loan causally relate to Defendant's failure to respond to his QWRs, nor
14 does he explain how or why responding to his requests would have mitigated the pecuniary losses that
15 he identifies. Further, Plaintiff's allegation that he incurred legal costs does not sufficiently plead
16 actual harm because "[i]f such were the case, every RESPA suit would inherently have a claim for
17 damages built in." *Lal v. Am. Home Serv., Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010).
18 Without more, these conclusory allegations are insufficient to nudge his claim across the line from
19 conceivable to plausible. *See Twombly*, 550 U.S. at 569.

20 **3.  Fraud Claim**

21    Plaintiff's second claim for relief alleges that Defendant defrauded him. (SAC ¶¶ 46–61.)
22 "The elements of fraud . . . are (a) misrepresentation (false representation, concealment or
23 nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance;
24 (d) justifiable reliance; and (e) resulting damage." *Small Frits Cos., Inc.*, 65 P.3d 1255, 1258 (Cal.
25 2003) (quoting *Lazar v. Super. Ct.*, 909 P.2d 981, 984 (Cal. 1996)). In federal court, Federal Rule of
26 Civil Procedure 9(b) sets the bar for claims alleging fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d
27 1097, 1102–03 (9th Cir. 2003). Under this rule, a party alleging fraud must "state with particularity
28 the circumstances constituting fraud." Fed. R. Civ. P. 9(b). These allegations must "be 'specific

enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Vess*, 317 F.3d at 1102–03 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). "'[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false.'" *Id.* (quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

In his FAC, Plaintiff alleged that "Defendant knowingly sent [him] billing statements" that included "fraudulent overcharges" on his loan, and that Defendant did so "with the intent to induce . . . [him] to pay fraudulent overcharges on his mortgage[.]" (Doc. No. 21 (FAC) ¶ 22.) In dismissing the claim as pleaded in the FAC, the Court found that Plaintiff failed to "provide any real explanation" why the billing statements were misleading. (Order 6.) Specifically, the Court concluded that Plaintiff did not allege any specific facts that explained how or why the billing statements included inflated charges. (*Id.* at 6.)

Plaintiff attempts to plead the "misrepresentation" element of fraud with more specificity in his SAC, alleging that Defendant charged him for "optional products that [he] did not agree to purchase" when he applied for his loan. (SAC ¶ 47.) From this, Plaintiff alleges nondisclosure, concealment, and affirmative misrepresentation. (*Id.* ¶¶ 48–61.) According to Plaintiff, Defendant did not provide him with "required disclosures" during the loan origination process. (*Id.* ¶ 48.) This alleged nondisclosure prevented him from discovering whether he would be charged for optional products. (*Id.*) Plaintiff next alleges that Defendant "actively concealed" the inclusion of these optional products in order to "induce [him] into paying for [the products]." (*Id.* ¶ 50.) As alleged, this concealment forced Plaintiff to "reasonably rel[y] upon Defendant's deception." (*Id.* ¶ 52.) Finally, Plaintiff believes that Defendant affirmatively misrepresented how much he owed on his loan by billing him for "optional products" and "overcharges on interest." (*Id.* ¶¶ 54–55.) He alleges that Defendant "knew" the billing statements were inflated, "intended" Plaintiff to rely on the statements, and that, as a result, he "justifiably" believed that the statements "included the true amount due upon

his loan." (*Id.* ¶¶ 56–58.)

The Court finds that Plaintiff fails to state a claim for relief on his fraud claim. *See Iqbal*, 129 S.Ct. at 1949. As to the nondisclosure allegation, Plaintiff has not alleged any facts explaining how or why the "required disclosures" would have notified him of Defendant's intent to charge him for optional products. (SAC ¶ 48.) He has also failed to explain why Defendant was "required" to disclose any such facts. (*Id.*) As to the concealment allegation, although Plaintiff alleges that he "reasonably relied upon Defendant['s] deception," he has not offered any facts explaining how he relied on the deception. (*Id.* ¶ 52.) Nor has Plaintiff explained how or why he would have acted differently if he had known that Defendant included optional products in his loan.

In addition, to the extent that Plaintiff has not identified any names, places, or dates involved in the misrepresentations, he has failed to allege the "who," "where," and "when" required under Rule 9(b), as interpreted. *See Vess*, 317 F.3d at 1106. Although Plaintiff states that "the terms of the loan were misrepresented to him" during the loan application process, he does not specify who made these representations, whether they were made verbally or electronically, or at which location or time they were made. (SAC ¶ 9.) Similarly, Plaintiff offers very few facts as to which particular billing statements included misrepresentations, or even when Defendant sent those billing statements. Without this information, Defendant cannot adequately defend against the allegation, because all it can do is "deny that [it] ha[s] done anything wrong." *Vess*, 317 F.3d at 1106 (quoting *Bly-Magee*, 236 F.3d at 1019). This is exactly the type of inadequacy that the specificity requirements of Rule 9(b) guard against.

**4.   Unjust Enrichment Claim**

Plaintiff's third claim for relief alleges unjust enrichment. (SAC ¶ 62–72.) The elements of unjust enrichment are: (1) receipt of a benefit; and (2) the unjust retention of the benefit at the expense of the other. *Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316, 323 (Cal. Ct. App. 2008). However, "even when a person has received a benefit from another, he is required to make restitution 'only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it.'" *Ghirardo v. Antonioli*, 924 P.2d 996, 1003 (Cal. 1996) (citation omitted).

In his FAC, Plaintiff alleged that the inflated billing statements caused him to pay Defendant

1  money that he did not owe. (FAC ¶ 29–30.) He alleged that he was entitled to restitution because
2  Defendant was unjustly enriched by accepting those payments. (*Id.*) The Court did not agree. (Order
3  7.) It dismissed the claim, finding that "Plaintiff ha[d] not pleaded facts that would establish that he
4  actually paid more than he owed on his loan. (*Id.*) As the Court stated, "Plaintiff ha[d] merely stated
5  the legal conclusion that he was over-billed and overpaid for his loan." (*Id.*)

6  Plaintiff seeks to cure these deficiencies in his SAC. First, he alleges that Defendant charged
7  him for products that he did not agree to purchase and for "overcharges of interest on the loan." (SAC
8  ¶ 63.) Plaintiff further alleges that he paid these bills, thereby allowing Defendant to "receive[] the
9  benefit of money not yet due from [him]." (*Id.*)

10  The Court finds that Plaintiff's SAC fails to adequately plead unjust enrichment. In fact, the
11  only difference between the FAC and the SAC is that, in the latter, Plaintiff has identified the
12  mechanism by which Defendant inflated his billing statements, namely, the inclusion of "optional
13  products" that he did not agree to purchase. (*Id.*) In so alleging, however, Plaintiff partially
14  contradicts his assertion, found elsewhere in the SAC, that Defendant charged him for "*an* optional
15  *product*." (*Id.* ¶¶ 21, 24, 45 (emphasis added).) The allegation also fails to identify with any
16  specificity what the optional product was. More importantly, this purported "benefit" arises from
17  Plaintiff's allegation of fraud, a claim that the Court has already dismissed. Without sufficient
18  allegations of wrongdoing, the Court cannot agree that Defendant's retention of benefits received
19  would be unjust.

20  **CONCLUSION**

21  For the reasons stated, Defendant's motion to dismiss is **GRANTED** and the FAC is
22  **DISMISSED WITH PREJUDICE**.[3] The Clerk shall close the file.
23  **IT IS SO ORDERED.**
24  DATED: February 10, 2011

25  Honorable Janis L. Sammartino
26  United States District Judge

---

28  [3] The Court declines to address Defendant's arguments regarding its liability for borrower claims under the Purchase and Assumption Agreement entered into between Defendant and the FDIC.